IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas J. Greco,
                                  Appellant

                   v.

Zoning Hearing Board of the City of
Wilkes-Barre and Renaud, LLC d/b/a
Vesuvio Pizzeria & Ristorante

: 
: No.  426 C.D. 2016
: Submitted: September 16, 2016
:
:
:
:
:
:
:
:

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED:  February 7, 2017

        Thomas J. Greco (Objector) appeals from a final order of the Court of Common Pleas of Luzerne County (trial court) affirming a decision of the Zoning Hearing Board of the City of Wilkes-Barre (ZHB) that granted the variance of Renaud, LLC d/b/a Vesuvio Pizzeria & Ristorante (Applicant) in connection with its restaurant.  Objector contends the ZHB erred in granting the variance where the evidence failed to demonstrate the requisite factors necessary for variance under the law.  Discerning no error, we affirm.

        Applicant is the owner of property located at 109-111 North Main Street, Wilkes-Barre, Luzerne County, Pennsylvania (Property).  The Property, which is improved with a building, sits on a 4471-square-foot lot and is located within an S-1 (special purpose) zoning district under the Wilkes-Barre Zoning Ordinance (Ordinance).  Applicant operates a restaurant on the Property, which is a

permitted use in the S-1 district. In August 2012, Applicant filed a zoning permit application to construct an L-shaped deck, which was denied. Applicant submitted an application for hearing before the ZHB, in which he requested a setback variance to reduce both side yard setbacks for the deck.

ZHB conducted a public hearing. At the hearing, with the permission of the ZHB, Applicant verbally amended his zoning application to seek only a dimensional variance pertinent to the installation of a 6-foot by 8-foot walk-in cooler. Applicant sought a reduction of both side yard setbacks from the required 15 feet to 13 feet and 1 foot respectively to accommodate the walk-in cooler.

At the hearing, Applicant presented the testimony of Donald Sabatino, a partial owner and operator of the restaurant. Objector, who is the neighboring landowner, was represented by counsel and opposed the variance at the hearing. Both sides presented exhibits.

At the close of evidence, the ZHB unanimously voted to approve Applicant's amended request for a variance to waive both side yard setbacks for the walk-in cooler. Thereafter, the ZHB issued a written decision containing findings of fact and conclusions of law, which can be summarized as follows.

Restaurants are permitted to have a 6-foot by 8-foot walk-in cooler as a necessity to the operation of their business. The installation of a 6-foot by 8-foot walk-in cooler will not result in an increase in seating at a restaurant. The installation of the proposed 6-foot by 8-foot walk-in cooler will be placed on an existing deck thereby resulting in no increase in maximum lot coverage. The proposed cooler will be placed next to an existing walk-in cooler, which measures 11 feet, 7 inches by 4 feet, 10 inches by 8 feet. There is an existing 8-foot chain link lattice fence located 1 foot between the proposed walk-in cooler location and

2

the adjacent property line. ZHB Opinion, 7/15/2016, Findings of Fact (F.F.) Nos. 3-7.

The irregular shape, narrowness, shallowness and the limited size of the 4471-square-foot lot of the Property was an unnecessary hardship due to such conditions pertaining to the proposed location of the walk-in cooler being 1 foot and 13 feet, respectively from the adjacent property line. Therefore, there was no possibility that the walk-in cooler could be located in strict conformity with the S-1 zoning district setback provisions of the zoning ordinance. The side yard variances that were granted for the walk-in cooler were the minimum variances, which afford relief and will represent the least modification possible of the side yard setback regulation at issue. The proposed walk-in cooler will not alter the essential character of the neighborhood and zoning district in which it is located and will neither substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare. Applicant presented sufficient testimony to justify granting variances to waive both side yard setbacks from the 15 feet down to 13 feet and 1 foot, respectively, in order to permit the installation of a 6-foot by 8-foot walk-in cooler as an addition to its existing restaurant. F.F. Nos. 8-11.

From this decision, Objector timely filed a land use appeal with the trial court. Applicant intervened. Without taking additional evidence, the trial court affirmed. Objector appealed to this Court.[1]

---

[1] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Taliaferro v. Darby Twp. Zoning Hearing Board*, 873 A.2d 807 (Pa. Cmwlth. 2005).

In this appeal, Objector argues the ZHB's findings are not supported by substantial evidence. Objector claims the evidence fails to satisfy the elements necessary for relief, namely undue hardship. Specifically, Objector asserts the denial of an additional cooler would not cause Applicant undue hardship or render its property useless. Applicant is merely seeking a variance in order to increase its business, investment and profitability. Applicant purchased this Property fully cognizant of the physical parameters.

To begin, the ZHB abuses its discretion when its findings are not supported by substantial evidence. *Hawk v. City of Pittsburgh Zoning Board of Adjustment*, 38 A.3d 1061, 1064 n.5 (Pa. Cmwlth. 2012). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence exists, the Court is mindful that the credibility of witnesses and the weight to be accorded to their testimony is within the sole province of the ZHB in its capacity as fact-finder. *Id.* at 1065. The ZHB is free to accept or reject the testimony of any witnesses, in whole or in part. *Id.*

This Court may not substitute its interpretation of the evidence for that of the ZHB. *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 (Pa. Cmwlth.), *appeal denied*, 887 A.2d 1243 (Pa. 2005). Assuming the record contains substantial evidence, we are bound by the ZHB's findings that result from resolutions of credibility and conflicting testimony. *Id.*

A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, as opposed to a use variance, which involves a request to use property in a manner that is wholly outside zoning regulations. *Hertzberg v. Zoning Board of Adjustment of*

4

*the City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998). The standards for granting a variance are well established and apply to use and dimensional variances. *Id.* at 46-47. Specifically, an applicant seeking a variance must demonstrate:

> (a) That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> (b) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>
> (c) That such unnecessary hardship has not been created by the appellant.
>
> (d) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.
>
> (e) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation at issue.

Section 1409.2 of the Ordinance; *accord* Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC)[2]; *Hertzberg*, 721 A.2d at 46-47.

"The overriding standard for a variance is unnecessary hardship." *Doris Terry Revocable Living Trust v. Zoning Board of Adjustment of City of Pittsburgh*, 873 A.2d 57, 63 (Pa. Cmwlth. 2005). For an applicant to show unnecessary hardship in the context of a use variance, he must prove that either: "(1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property is valueless for any purpose permitted by the zoning ordinance." *Taliaferro*, 873 A.2d at 812. "The applicant must show the hardship is unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on the entire district." *Id.* "Mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance." *Id.* "Where a condition renders a property almost valueless without the grant of a variance, unnecessary hardship is established." *Id.* "Further, where zoning regulations prohibit any reasonable use of the property absent variance relief, the requisite hardship is proven." *Id.*

However, in *Hertzberg*, the Pennsylvania Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance. *Hertzberg*, 721 A.2d at 49. The Supreme Court explained:

> When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations.

---

[2] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. §10910.2(a).

6

> Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

*Id*. at 47. The Court held "the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Id*. at 48. Under *Hertzberg*, the courts may consider multiple factors in determining whether the applicant established unnecessary hardship for a dimensional variance. *Id*. at 50. These factors include the cost of the strict compliance with the zoning ordinance, the economic hardship that will result from denial of a variance, and the characteristics and conditions of the surrounding neighborhood. *Id*.

Although *Hertzberg* eased the requirements, it did not remove them. *Doris Terry*, 873 A.2d at 62. An applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship. *Id.* at 61-63. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*. *See Singer v. Philadelphia Zoning Board of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011); *see, e.g., Lamar Advantage GP Co. v. Zoning Hearing Board of Adjustment of City of Pittsburgh*, 997 A.2d 423, 445 (Pa. Cmwlth. 2010) (rejecting applicant's request for dimensional variance for proposed sign where only asserted hardship involved alleged benefit to community and increase in income).

Here, the ZHB's decision to grant Applicant's request for dimensional variance from the setback requirements was supported by substantial evidence.

7

Sabatino testified the property was irregularly shaped and that it was not possible to use the proposed location for the walk-in cooler for any other use. ZHB Hearing, 5/22/13, Notes of Testimony (N.T.) at 16-17; *see also* N.T. at 8.

Sabatino testified it would be a hardship if Applicant cannot install a walk-in cooler in the space. N.T. at 17. He explained:

> Right now, we have the walk-in cooler now. And it's there. And it's *already too small for the business* itself. And the other one is – it's just an extension to put kegs in.

N.T. at 17 (emphasis added). Applicant intends to use the cooler for beer lines as a draw for its tap system. N.T. at 14. Kegs for draft beer would be kept in the cooler and the lines would run from the taps inside the bar to the cooler. N.T. at 14, 15. This cooler would be attached to a cooler already located on the Property. N.T. at 12, 20.

In addition, he testified the variance requested represents the minimum variance practical. N.T. 17. The side yard setbacks are 15 feet. Section 509 of the Ordinance. To accommodate the walk-in cooler, Applicant requested a variance to reduce: (1) the 15-foot setback to 13 feet on one side, and (2) a pre-existing 1.5-foot setback to 1 foot on the side that adjoins Objector's property. N.T. at 8-9. Sabatino testified the walk-in cooler would remain within the Property line, 1 foot within a pre-existing fence located on the Property. N.T. at 12, 13, 14; *see also* N.T. at 10.

According to Sabatino, the variance will not change the neighborhood. N.T. at 17. In fact, Sabatino testified it would help reduce noise emanating from the restaurant. N.T. at 17. Sabatino explained the walk-in cooler will close the back part of the restaurant where there is currently a glass door. N.T.

8

at 17. The walk-in cooler will be insulated. N.T. at 18, 24. The addition of the walk-in cooler will help confine noise to the bar area by reducing noise escaping from the bar through the glass door. N.T. at 18, 24.

Upon review, the ZHB's findings are supported by the evidence and support the grant of a dimensional variance. As for Objector's claim that the variance is not necessary but merely an attempt by Applicant to increase its business, investment and profitability, the record is devoid of evidence to support this claim. Applicant established it was a business necessity. N.T. at 17. The walk-in cooler will not increase seating at the restaurant or increase maximum lot coverage as the cooler will sit on an existing deck within the existing fence line. Thus, we conclude the ZHB did not err or abuse its discretion in granting the dimensional variance from the setback requirements.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

Judge Cosgrove did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas J. Greco,          :
                                        : No. 426 C.D. 2016
               Appellant    :
                                         :
           v.              :
                                         :
Zoning Hearing Board of the City of  :
Wilkes-Barre and Renaud, LLC d/b/a  :
Vesuvio Pizzeria & Ristorante     :

O R D E R

AND NOW, this 7th day of February, 2017, the order of the Court of Common Pleas of Luzerne County, dated December 29, 2015, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge